Filed 2/13/26  Ramirez Canyon Preservation Fund v. Cal. Coastal Com. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| RAMIREZ CANYON PRESERVATION FUND, | B332997 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS149044) |
| v. | |
| CALIFORNIA COASTAL COMMISSION, | |
| Defendant and Respondent; | |
| COUNTY OF LOS ANGELES, | |
| Real Party in Interest. | |

APPEAL from an order of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Affirmed.

Manatt, Phelps & Phillips and Michael M. Berger for Plaintiff and Appellant.

Rob Bonta, Attorney General, Daniel A. Olivas, Assistant Attorney General, Elizabeth St. John and Sahar Durali, Deputy Attorneys General, for Defendant and Respondent.

Dawyn R. Harrison, County Counsel, Starr Coleman, Assistant County Counsel, Roland Trinh, Deputy County Counsel for Real Party in Interest.

_____

Ramirez Canyon Preservation Fund (RCPF) filed a petition for writ of mandate in the superior court challenging the California Coastal Commission's (Commission) certification of a local coastal program approved by the County of Los Angeles (County) in 2014.  The petition alleged the program violated the California Coastal Act of 1976 (Pub. Res. Code, § 30000 et seq.)[1] (Coastal Act) by recognizing low-impact camping as a resource-dependent use permissible in environmentally sensitive habitat areas (ESHA) under section 30240.

The trial court granted in part and denied in part the petition.  The court first determined that "[t]he Commission's interpretation of section 30240 to permit low-impact campgrounds in ESHA areas as a resource-dependent use is correct as a matter of law."  However, the court also found that the 2014 local coastal program violated section 30240 because it did not "properly implement section 30240's prohibition against significant disruption, and instead implement[ed] a lower standard that development should avoid disruption 'where feasible' and mitigated if necessary."  The court set aside "[o]nly the provisions permitting low-impact campgrounds based on a feasibility/mitigation standard of development" and entered a

_____

[1]     All further undesignated statutory references are to the Public Resources Code.

2

judgment directing the Commission to bring the program into compliance with the Coastal Act pursuant to its decision.

Subsequently, the Commission moved to discharge the writ based on its compliance therewith. In granting the motion, the trial court found the amended local coastal program certified by the Commission in 2023 satisfied the terms of the writ. The court refused to consider RCPF's new challenges to the program based on the program's failure to recognize and protect a third habitat within the coastal region in question as ESHA. It found those challenges were barred, noting RCPF could have, but did not, raise them in its original petition.

On appeal from the order discharging the writ, RCPF asserts numerous "questions presented," which we distill to the following three arguments: (1) the trial court erroneously declined to address RCPF's contentions based on the amended local coastal program's failure to treat a third habitat as ESHA; (2) low-impact camping is not a resource-dependent use within the meaning of section 30240; and (3) the amended program still applies a feasibility/mitigation standard with respect to development in ESHA. We reject RCPF's contentions and affirm.

## LEGAL BACKGROUND

## I. Review and Certification of Local Coastal Programs

The Coastal Act "was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California." (*Yost v. Thomas* (1984) 36 Cal.3d 561, 565.) The Coastal Act "expressly recognizes the need to 'rely heavily' on local government '[t]o achieve maximum responsiveness to local conditions, accountability, and public accessibility . . . .' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 794.) Consequently,

"[a]s relevant here, . . . [the Coastal Act] requires local governments to develop local coastal programs, comprised of a land use plan and a set of implementing ordinances designed to promote the act's objectives of protecting the coastline and its resources and maximizing public access." (*Ibid.*)

The Commission reviews local coastal programs for compliance with the Coastal Act's policies. (See §§ 30510, 30512, subd. (a), 30513, subd. (a); see also *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 931 (*McAllister*).) In deciding whether to certify a land use plan, the Commission evaluates whether the plan "does, or does not, conform with the" Coastal Act's policies and requirements. (§ 30512.2, subd. (a).) It "may only reject [a local coastal program's] zoning ordinances, zoning district maps, or other implementing actions on the grounds that they do not conform with, or are inadequate to carry out, the provisions of the certified land use plan." (§ 30513, subd. (b).) During its review, the Commission may suggest modifications to program components it has rejected or declined to certify. (§§ 30512, subd. (b), 30513, subd. (c).) If adopted by the local government and transmitted to the Commission, the modified provisions shall be deemed approved or certified upon confirmation by the Commission's executive director. (*Ibid.*)

## II. ESHA: Permissible Uses and Development

The Coastal Act "provides heightened protection for areas that are designated 'environmentally sensitive habitat areas' . . . and establishes strict preferences and priorities that guide development in them." (*McAllister*, *supra*, 169 Cal.App.4th at p. 923, fn. omitted.) Specifically, and as relevant here, section 30240, subdivision (a) states: " 'Environmentally sensitive habitat areas shall be protected against significant

4

disruption of habitat values, *and* only uses dependent on those resources shall be allowed within those areas.' " (Italics added.) Through this "simple and direct" language, the statute "limit[s] development inside [ESHA] to uses that are dependent on the resources to be protected and that do not significantly disrupt habitat values." (*McAllister*, at pp. 928–929.)

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  The 2014 Local Coastal Program

In February 2014, the County submitted to the Commission a proposed local coastal program for the coastal zone located in the Santa Monica Mountains. The program consisted of a land use plan, which provided the general overarching planning policies and programs for the area in question, and a local implementation plan, which contained the more detailed zoning and/or implementing ordinances designed to carry out the land use plan's policies. The Commission approved the land use and local implementation plans in April 2014 and July 2014, respectively, subject to its suggested modifications. In August 2014, the County adopted the Commission's suggested modifications. Accordingly, in October 2014, the Commission certified the entire local coastal program as modified.

The 2014 local coastal program's land use plan divided the coastal zone at issue into three habitat categories—H1, H2, and H3—based on their levels of biological significance, rarity, and sensitivity. Areas falling within H1 are of the highest biological significance, rarity, and sensitivity and comprise approximately 10,223 acres of habitat. Areas in H2, comprising approximately 39,474 acres of habitat, are also of high biological significance, rarity, and sensitivity, and are particularly important to the Santa Monica Mountains ecosystem, but do not qualify as H1.

5

H3 is comprised of areas that would have been designated H2 habitat, but in which the native vegetation has been significantly disturbed, removed, fragmented, or isolated by existing development. H3 comprises the smallest percentage of habitat within the Santa Monica Mountains, approximately 6,093 acres. The 2014 program treated H1 and H2 as ESHA under the Coastal Act.

The 2014 local coastal program's land use plan and local implementation plan both recognized low-impact camping as a resource-dependent use permissible in H1 and H2. The plan also contained numerous provisions requiring resource-development uses, including low-impact campgrounds, to be located, designed, maintained, and sited to avoid or minimize impacts to H1 or H2 to the maximum extent feasible.

## II. Proceedings on Petition for Writ of Mandate

In June 2014, RCPF filed a petition for writ of mandate in the trial court challenging the Commission's April 2014 certification of the local coastal program's land use plan. The petition alleged campgrounds are not a resource-dependent use and, therefore, the land use plan violated section 30240 by authorizing their siting and development in ESHA. It also alleged campgrounds and their associated support facilities would necessarily disturb the rare and valuable plant and animal life in ESHA, resulting in significant degradation of habitat values. The petition thus sought: (1) a "peremptory writ of mandate commanding . . . [the Commission] to modify the definition of resource dependent uses in its Local Coastal Program so that such uses do not include campgrounds within ESHA"; and (2) "a declaration that campgrounds and associated

6

support facilities are not a 'resource-dependent use' under the Coastal Act."

At a hearing in August 2017, the trial court granted in part and denied in part RCPF's petition. In so doing, it first determined that low-impact camping is a resource-dependent use within the meaning of section 30240. The trial court reasoned: "[A] low-impact campground exposing the public to the unique ecosystem of an ESHA can only be situated in the ESHA. While a campground can exist outside of an ESHA—such as in an urban park—that does not mean that the low-impact campground is not dependent on the ESHA. Just like a [hiking] trail, the low-impact campground permits one to experience the ecosystems of the Santa Monica Mountains. The low-impact campground is a resource-dependent use because it is impossible to have the same experience at any other location."

The trial court then determined that the local coastal program's "development standards are not consistent with [section] 30240's protection of ESHA . . . ." Rather than prohibiting significant disruption in H1 and H2 as required under section 30240, the court explained, the program "implements a lower standard that development should avoid disruption 'where feasible' and mitigated if necessary." Therefore, the trial court concluded, the program did not comply with section 30240's restrictions on development in ESHA, as it effectively authorized the siting and development of campgrounds in a manner significantly disruptive to H1 and H2 so long as those disruptions could not be feasibly avoided and were "minimized to less than significant."

In granting the petition in part, the trial court set aside as void only the program provisions "permitting low-impact

campgrounds based on a feasibility/mitigation standard of development" and left it to the Commission's discretion "as to how to rectify the issue." A judgment was filed in September 2017 ordering the Commission and the County[2] "to take the actions necessary to bring the Santa Monica Mountains Local Coastal Program into conformity with the California Coastal Act in a manner consistent with" its August 2017 ruling. RCPF did not appeal the judgment.

## III.   Postjudgment Writ Compliance Proceedings

The Commission filed a return to the writ of mandate in March 2019 that alleged certain actions the Commission "expects" the County Board of Supervisors to take and advised that the Commission would file another return when changes to the local coastal program were certified by the Commission. Subsequently, in June 2022, RCPF filed a motion to file a supplemental petition for writ of mandate and the proposed supplemental petition. In October 2022, the trial court denied the motion as premature. RCPF did not appeal the denial of its motion.[3]

---

[2]   As a real party in interest, the County joins the Commission's respondent's brief on appeal in full.

[3]   In its opening brief, RCPF describes one of the "questions presented" in this appeal as follows: "Was it error to reject the supplemental petition even though that petition built on the original petition by raising facts that did not exist at the time the original petition was filed?" However, RCPF did not appeal the denial of its motion to file a supplemental petition; therefore, we find this issue is outside the scope of this appeal and we decline to address it further.

At the same time, RCPF filed a new petition in a separate case number, alleging that the amended local coastal program continues to violate section 30240 with respect to the placement of campground buffers, restroom foundations and plumbing, and other campground support facilities. The new case, referred to by the parties as *Ramirez II*, has been deemed related to this case and stayed.[4]

In March 2023, the Commission again filed a return to the writ of mandate explaining that, as of February 2023, its certification of the County's amendment to the local coastal program, as modified per its recommendation, was complete.

Two months later, the Commission moved to discharge the writ based on its satisfaction of the writ's requirements. In support of its motion, the Commission asserted that the amended provisions in the local coastal program's land use plan "clarified that resource-dependent uses, including but not limited to trails, access ways, and low-impact campgrounds, must avoid significant disruption of H1 and H2 habitats." Further, the Commission explained, several development provisions in the local implementation plan were changed by "replac[ing] the 'maximum extent feasible' language with the 'avoid significant disruption' standard of review."

RCPF opposed the motion and argued, among other things: (1) several provisions in both the land use plan and local implementation plan continue to permit significant disruption of ESHA and should have been modified; (2) the local implementation plan still "rel[ies] on the concepts of feasibility and mitigation if necessary" in setting forth the development

---

[4]    We grant the Commission's June 12, 2025 request for judicial notice of stay orders filed in *Ramirez II*.

9

standards for the siting of parking lots and drop-off areas in H2; and (3) the program violates the Coastal Act by failing to treat H3 as ESHA.

The trial court granted the motion to discharge the writ at a hearing in July 2023. Repeatedly emphasizing the writ's limited scope, the court concluded the local coastal program's amended provisions "make clear that resource-dependent uses like low-impact camping must be sited to avoid significant disruption of ESHA" and complied with the writ. It declined to consider RCPF's claims predicated on the program's failure to recognize and protect H3 as ESHA, ruling those claims were barred by the doctrine of res judicata.

RCPF timely appealed from the order discharging the writ.

## DISCUSSION

### I. The Local Coastal Program's Treatment of H3 as Non-ESHA

At the outset, RCPF asserts reversal is required because the trial court should have addressed whether the Commission ran afoul of the writ by failing to ensure the local coastal program recognized and protected H3 as ESHA. In support of its position, RCPF argues that, rather than presenting this issue for the first time in the postjudgment writ compliance proceedings, it raised the H3-related issues in its writ petition and its opening brief filed in the trial court. We are not persuaded by these contentions and, for the reasons discussed below, we conclude the trial court correctly declined to consider RCPF's H3 claims.

Neither RCPF's writ petition nor its opening brief filed in the trial court sought relief based on the local coastal program's failure to treat H3 as ESHA. The petition's statement of facts acknowledged that the land use plan divided the habitats in the

10

relevant coastal region into H1, H2, and H3, and observed that H1 and H2 constitute ESHA, while H3 is "not considered to be ESHA." The petition's causes of action and prayer for relief, however, mention nothing of H3. Instead, they sought redress solely for the land use plan's recognition of camping as a resource-dependent use permissible within ESHA in violation of section 30240.

Similar to the petition, RCPF's opening brief in the trial court mentioned H3 in its statement of facts, but focused on challenging the local coastal program's authorization of low-impact camping in H1 and H2. In addition, the opening brief explained RCPF sought limited relief, namely, an order declaring "that low impact campgrounds and associated support facilities are not a 'resource-dependent' use under the Coastal Act" and requiring the local coastal program provisions recognizing low-impact campgrounds as such be stricken.

Accordingly, RCPF's petition and opening brief filed in the trial court reflect that prior to and through entry of the judgment on its petition, RCPF knew the local coastal program did not recognize H3 as ESHA and therefore did not limit development in H3 pursuant to section 30240. RCPF, however, did not seek relief based on the program's treatment of H3 as non-ESHA until the postjudgment writ compliance proceedings. On these facts, we conclude RCPF's attempt to assert new challenges to the local coastal program based on H3 was improper.

*Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455 (*Ballona*) supports our conclusion. The procedural posture of *Ballona* is similar to this case. In *Ballona*, the City of Los Angeles (City) sought to discharge a peremptory writ of mandate requiring it to vacate its certification of an

11

environmental impact report (EIR) and revise the EIR to address various deficiencies therein.  (*Ballona*, at pp. 463–464.)  In objecting to the return seeking the writ's discharge, one of the appellants asserted the EIR was deficient on grounds previously not raised in the proceedings giving rise to the judgment issuing the writ.  (*Id*. at pp. 464, 479, 481.)  The trial court overruled the objections and discharged the writ.  (*Id*. at p. 464.)

The Court of Appeal affirmed, holding:  "[A]ny challenge to an EIR or other agency action arising from facts in existence before the entry of judgment must be asserted in the proceeding before the entry of judgment.  The failure to assert such a challenge before the entry of judgment or the failure to successfully appeal the judgment on an issue arising from facts in existence before the entry of judgment precludes a party from asserting the challenge in connection with postjudgment proceedings concerning compliance with the writ."  (*Ballona*, *supra*, 201 Cal.App.4th at p. 481.)  To hold otherwise, the court explained, would "undermine the finality of the judgment." (*Id*. at p. 480.)  Thus, the court concluded the new challenges to the EIR were "beyond the scope of the postjudgment proceedings and that the trial court properly rejected them."  (*Id*. at p. 481.)

In short, pursuant to *Ballona*, the trial court correctly declined to consider RCPF's challenges to the local coastal program based on its treatment of H3 as non-ESHA.  Those contentions were raised for the first time in postjudgment writ compliance proceedings and rested on facts in existence prior to entry of the judgment on RCPF's petition.  Therefore, RCPF's H3 arguments fell "beyond the scope of the postjudgment proceedings" and were "properly rejected" by the trial court. (*Ballona*, *supra*, 201 Cal.App.4th at p. 481.)

12

## II. Low-Impact Campgrounds as a Resource-Dependent Use

### A. RCPF May Challenge the Trial Court's 2017 Finding That Low-Impact Campgrounds Are a Resource-Dependent Use

Next, RCPF seeks to challenge the trial court's finding that the Commission properly interpreted section 30240 to permit low-impact campgrounds in ESHA as a resource-dependent use. The Commission argues that RCPF cannot raise this issue on appeal because RCPF failed to appeal the September 2017 judgment granting in part and denying in part the underlying writ petition. The Commission relies on *Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394 (*Pollak*) in support of its position. We find *Pollak* unpersuasive on this point.

In *Pollak*, a State Board of Equalization employee filed a petition for administrative mandate after the State Personnel Board (Personnel Board) sustained four disciplinary charges against him and ordered him demoted. (*Pollak, supra,* 88 Cal.App.4th at p. 1399.) The trial court granted the writ in part and remanded to the Personnel Board for reconsideration of the penalty. (*Ibid.*) After the Personnel Board issued a new decision on the penalty, Pollak filed a supplemental petition, asking the court to "re-review the record, to eliminate all charges against him, and to award him attorney's fees." (*Id.* at p. 1397.) The trial court refused to reconsider the rulings made on Pollak's original petition on res judicata grounds. (*Ibid.*)

The Court of Appeal affirmed, but on different grounds. (*Pollak, supra,* 88 Cal.App.4th at p. 1397.) The Court of Appeal concluded that "because Pollak's supplemental petition sought a readjudication of factual issues decided adversely to him by a

13

judgment in the same action, he was seeking a new trial as to those issues[,]" but Pollak never made a motion for a new trial. (*Id*. at p. 1405.) "Pollak's failure to file a motion for new trial dooms his attempt to relitigate factual issues adjudicated by the trial court in its first judgment." (*Id*. at p. 1408.)

We find the issue presented in *Pollak*, i.e., whether a party who succeeds in part on a writ petition may seek to relitigate in the trial court the issues decided in the original petition via a supplemental petition or a motion for a new trial, is not analogous to the situation presented in this case. Here, RCPF is not seeking to relitigate at the trial court level whether low-impact campgrounds are a resource-dependent use. Rather, RCPF challenges the court's legal conclusion that low-impact campgrounds are a resource-dependent use on appeal.

We find the authorities cited in RCPF's reply are more persuasive, particularly *Jackson v. Board of Civil Service Commissioners of City of Los Angeles* (2024) 99 Cal.App.5th 648 (*Jackson*). In *Jackson*, Division Seven of this court applied the criteria established by our Supreme Court in *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109 (*Dhillon*) when considering whether an order on a petition for writ of administrative mandamus remanding the matter for further proceedings before the administrative body is a final, appealable order.

The Supreme Court in *Dhillon* identified two criteria to address the appealability issue. First, "as a formal matter," it considered whether any "issue was then left for the court's ' "future consideration except the fact of compliance or noncompliance with the terms of the first decree." ' " (*Dhillon, supra*, 2 Cal.5th at p. 1117.) And second, "as a practical matter,"

14

the court considered whether the ruling in question "may effectively evade review." (*Ibid.*)

In *Dhillon*, a surgeon filed a writ petition against hospital operator John Muir Health (John Muir), challenging the suspension of his clinical privileges. (*Dhillon*, *supra*, 2 Cal.5th at p. 1112.) The plaintiff alleged John Muir violated its bylaws by imposing discipline without holding a hearing before a judicial review committee (JRC). (*Id*. at pp. 1112–1113.) Plaintiff asked the court to order a hearing before the JRC and for other relief against John Muir, including an order that John Muir not make disparaging remarks about plaintiff. (*Id*. at p. 1113.) The trial court granted the petition in part and ordered John Muir to hold a hearing before the JRC based on its interpretation of JRC's bylaws. It denied the petition in all other respects. (*Ibid.*)

John Muir appealed, but the Court of Appeal dismissed the appeal, finding the trial court's order was not a final, appealable order. (*Dhillon, supra*, 2 Cal.5th at p. 1113.) The Supreme Court reversed, concluding that the order was an "appealable final judgment." (*Id*. at p. 1112.)

In discussing the first criterion, the Supreme Court noted that the trial court either granted or denied each of plaintiff's claims, remanded to John Muir to hold a hearing before the JRC, and did not reserve judgment to consider any issues. (*Dhillon*, *supra*, 2 Cal.5th at pp. 1116–1117.) Thus, the Supreme Court explained, there was nothing left for the trial court to consider except the fact of compliance or noncompliance with the writ. (*Id*. at p. 1117.)

As to the second criterion, the Supreme Court observed that unless the order was immediately appealable, the trial court's interpretation of John Muir's bylaws may effectively

15

evade review. (*Dhillon, supra,* 2 Cal.5th at p. 1117.) The court noted that regardless of the outcome of the hearing before the JRC, John Muir may have no opportunity to "overturn the superior court's determination that Dr. Dhillon was entitled to the JRC hearing in the first place." (*Id.* at p. 1117.)

In *Jackson,* the Court of Appeal considered similar circumstances, but reached the opposite conclusion. Nathan Jackson filed a writ petition against the Board of Civil Service Commissioners of City of Los Angeles (Board) challenging his suspension for four sustained counts of misconduct. (*Jackson, supra,* 99 Cal.App.5th at pp. 652–654.) The trial court granted the petition in part, finding sufficient evidence to sustain three of the four counts, and remanded to the Board to reconsider the fourth count and the resulting discipline. (*Id.* at pp. 654–655.) Jackson appealed.

The Court of Appeal applied the *Dhillon* criteria and concluded the judgment was not an appealable final judgment. (*Jackson, supra,* 99 Cal.App.5th at pp. 657–658.) In so doing, the appellate court first explained: "The Supreme Court's first reason for concluding the judgment in *Dhillon* was appealable applies here. The trial court granted (in part) Jackson's claim for a writ of administrative mandate and did not reserve jurisdiction to consider any other issues. Nothing remained to be done in the trial court[.]" (*Id.* at p. 657.) It then stated: "But the second reason—that the issues raised on appeal may effectively evade review if there is no right to immediate appeal—does not apply here." (*Ibid.*)

The appellate court noted that if the Board imposed different discipline on Jackson, he could file a new petition and appeal from the ensuing judgment. (*Jackson, supra,*

16

99 Cal.App.5th at p. 657.) "And in that appeal . . . Jackson may challenge the proceedings on remand and any intermediate adverse rulings that necessarily affected the judgment, *including the trial court's order granting in part the first writ petition.*" (*Id.* at p. 658, italics added.)

The appellate court also commented on the identity of the appealing party. The court relied on analogous federal precedent noting that in cases finding an order would effectively evade review unless the order was immediately appealable, " 'the remand orders [federal appellate courts] have recognized as satisfying this requirement have been uniform in one respect: all were challenged on appeal by an administrative agency.'[ ] 'The principle is not normally available,' however, 'to the agency's adversary.' " (*Jackson, supra*, 99 Cal.App.5th at p. 660, quoting *Alsea Valley Alliance v. Department of Commerce* (9th Cir. 2004) 358 F.3d 1181, 1184 and *Lakes Pilots Assn., Inc. v. United States Coast Guard* (DC Cir. 2004) 359 F.3d 624, 625 (*Lakes Pilots Assn.*).)

The *Jackson* court went on the observe: "The party opposing the agency's action, on the other hand, 'will still be aggrieved by the outcome (assuming that the [agency] doesn't spontaneously change its position . . .) and thus will be able again to seek judicial review, including review in the court of appeals, *raising not only new issues but all those on which it got no satisfaction in its original challenge.*' " (*Jackson, supra*, 99 Cal.App.5th at p. 660, italics added, quoting *Lake Pilots Assn., supra*, 359 F.3d at p. 625.)

Here, we apply the *Dhillon* criteria, although we recognize the different procedural posture. We are not faced with a direct appeal from the September 2017 judgment. But we are still

17

called to decide whether that judgment was a final, appealable order. If it was final, RCPF failed to file a timely appeal from the September 2017 judgment and cannot challenge that judgment on this appeal. (See *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 509.) If it was not final, RCPF's challenge is proper in this appeal.

We conclude that the first *Dhillon* criterion is arguably satisfied, as the trial court granted in part and denied in part RCPF's writ petition, did not reserve jurisdiction on any issues, and had nothing remaining for its consideration except the fact of compliance or noncompliance with the writ. As to the second criterion, whether the issues presented in this appeal may effectively evade review, we find this criterion does not apply.

Had the Commission wished to appeal from the September 2017 judgment and the trial court's finding that the local coastal program's standards for low-impact campgrounds based on a feasibility/mitigation standard violated the Coastal Act, that issue may have evaded appellate review. Once the Commission complied with the writ, it would have been effectively precluded from challenging that finding, as compliance with the writ would necessarily require the elimination of the feasibility/mitigation standard.[5] But that is not this appeal.

Here, RCPF is the party opposing the agency's action and seeking review of the underlying writ order. As noted in *Jackson* and the authorities on which the *Jackson* court relied, RCPF may challenge in this appeal "the trial court's order granting in part

---

[5] In fact, the Commission did file an appeal from the September 2017 judgment, but the Commission subsequently abandoned the appeal and accepted the writ.

18

the first writ petition." (*Jackson, supra*, 99 Cal.App.5th at p. 658; see also *Lakes Pilots Assn., supra*, 359 F.3d at p. 625 [party opposing agency action may appeal issues "on which it got no satisfaction in its original challenge"].)

Thus, we conclude that RCPF may appeal the issue on which it got no satisfaction in its original challenge—the designation of low-impact campgrounds as a resource-dependent use.

### B. The Trial Court Properly Concluded That Low-Impact Campgrounds Are a Resource-Dependent Use

RCPF's original writ petition sought: (1) a "peremptory writ of mandate commanding . . . [the Commission] to modify the definition of resource dependent uses in its Local Coastal Program so that such uses do not include campgrounds within ESHA"; and (2) "a declaration that campgrounds and associated support facilities are not a 'resource-dependent use' under the Coastal Act." The trial court concluded that "[t]he issue of whether a low-impact campground is a resource-dependent use is an issue of statutory interpretation for the court to decide." We agree.

On appellate review of mandamus proceedings, "[w]here . . . the interpretation of a statute or regulation is involved, we apply a de novo standard of review." (*Gann v. Acosta* (2022) 76 Cal.App.5th 347, 354.) However, in applying de novo review, "courts will be deferential to government agency interpretations of their own regulations, particularly when the interpretation involves matters within the agency's expertise and does not plainly conflict with a statutory mandate." (*Environmental Protection Information Center v. California Dept. of Forestry &*

19

*Fire Protection* (2008) 44 Cal.4th 459, 490, citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13 (*Yamaha*).)

RCPF argues that the United States Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* (2024) 603 U.S. 369 (*Loper Bright*) and the California Supreme Court's decision in *Center for Biological Diversity, Inc. v. Public Utilities Com.* (2025) 18 Cal.5th 293 (*Center for Diversity*) have minimized this deference. We disagree.

*Loper Bright* concerned the framework used to interpret ambiguous statutes administered by federal agencies. (*Loper Bright*, *supra*, 603 U.S. at p. 379.) Clearly, the Commission is not a federal agency, and RCPF has acknowledged that section 30240 is not ambiguous. Therefore, we find *Loper Bright* has no application to this case.

*Center for Diversity* was strictly limited to the " 'uniquely deferential' " interpretation of the Public Utilities Code, which our Supreme Court noted "differs from the standard generally applicable to agencies' statutory interpretations." (*Center for Diversity*, *supra*, 18 Cal.5th at p. 303.) With respect to the general standard of review for an agency's statutory interpretation, the Supreme Court confirmed the "leading case concerning review of an agency's statutory interpretation is *Yamaha*." (*Id*. at p. 305.) *Yamaha*, in turn, articulated that standard as follows: "Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course . . . ." (*Yamaha, supra*, 19 Cal.4th at p. 7.) Thus, we continue to give deference to an agency's interpretation of its own regulations, in the context of our independent review of the statute.

20

As discussed above, section 30240, subdivision (a) states: " 'Environmentally sensitive habitat areas shall be protected against any significant disruption of habitat values, *and* only uses dependent on those resources shall be allowed within those areas.' " (Italics added.) Courts have grappled with the concept of a resource-dependent use. As one such court found when interpreting section 30240: "The only potential ambiguity involves the phrase 'those resources,' which does not refer back to a list of resources. However, the context makes it clear that the phrase could only be referring to the resources that make an area a protected habitat—i.e., 'plant or animal life or their habitats [that] are either rare or especially valuable because of their special nature or role in an ecosystem . . . .' " (*McAllister, supra*, 169 Cal.App.4th at p. 928, quoting §§ 30107.5 & 30240, subd. (a).)

RCPF cites to three cases that it believes compel a finding that low-impact camping is not a resource-dependent use: *Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493 (*Bolsa Chica*), disapproved on other grounds by *Dhillon, supra*, 2 Cal.5th 1109*, McAllister*, *supra*, 169 Cal.App.4th 912, and *Feduniak v. California Coastal Com*. (2007) 148 Cal.App.4th 1346 (*Feduniak*). We are not so compelled.

The ruling in *Bolsa Chica* did not turn on whether the project in question—a five-acre residential development in a eucalyptus grove identified as ESHA due to its status as a roosting and nesting habitat for raptors—was a resource-dependent use. (See *Bolsa Chica, supra*, 71 Cal.App.4th at pp. 505–508.) The local coastal program in question required that an alternate raptor habitat be developed in a nearby community as a condition for allowing the residential development. (*Id*. at 507.) The Court of Appeal concluded that

"section 30240 does not permit a process by which the habitat values of an ESHA can be isolated and then recreated in another location." (*Ibid*.) Because the residential development would create a significant disruption of habitat values, the appellate court held that the program did not comply with the Coastal Act. (*Id*. at p. 508.)

Likewise, the ruling in *Feduniak* did not turn on whether there was a resource-dependent use. Rather, the Court of Appeal reversed a trial court order that would have estopped the California Coastal Commission from enforcing an order for a homeowner to remove a three-hole golf course surrounding their home, which was situated in ESHA. (*Feduniak, supra*, 148 Cal.App.4th at p. 1352.) Although there was no discussion of whether the golf course was a resource-dependent use, the court found the golf course "represented ongoing developmental damage to the coast that continued to frustrate the public interest in having the parcel restored to its natural state." (*Id*. at p. 1378.)

In *McAllister*, the Court of Appeal concluded that the construction of a large residence within two habitat areas (for an endangered butterfly and the seacliff buckwheat plants on which the butterfly depended, and for coastal bluff scrub) was not a resource-dependent use. (*McAllister, supra*, 169 Cal.App.4th at p. 918.) The court noted the purpose of the project "is to build a house for residential use, and such use is not dependent on the seacliff buckwheat or bluff scrub. Nor is building a residence akin to the uses identified as permissible in the [local coastal plan] such as hiking trails[.]" (*McAllister, supra*, 169 Cal.App.4th at p. 933.)

Thus, two of three cases cited by RCPF contain no discussion about whether a five-acre residential development or a three-hole golf course were resource-dependent uses. And in *McAllister*, the court concluded that a residence was not dependent on the plant or animal life existing within the habitat area. We find no comparison between a large residence and the low-impact campgrounds at issue here.

Rather, as argued by the Commission both in the trial court and on appeal, we are persuaded that low-impact camping is more akin to hiking trails, which have been implicitly recognized as a permissible resource-dependent use. (See *McAllister*, *supra*, 169 Cal.App.4th at p. 933.) As the Commission argued to the trial court: "Like hiking trails, these low-impact campgrounds are authorized specifically to maintain the nature of the resource as an open and protected area, while allowing citizens to immerse themselves in the rare natural ecosystems and remarkable biodiversity that exists in the Santa Monica Mountains through an overnight stay rather than just passing through on a trail. Low-impact campgrounds that allow people to enjoy the rare ecosystems of this particular protected public resource in this manner cannot occur in any other location, making their use entirely dependent on the Santa Monica Mountains ESHA. . . . [C]ampgrounds that intend to expose the public to the unique ecosystem of Santa Monica Mountains can only be situated there."

Further, the Commission successfully argued in the trial court that both hiking trails and low-impact campgrounds can be sited elsewhere, but that does not mean that hiking trails and low-impact campgrounds that are specifically sited within ESHA are not resource-dependent uses. As the trial court observed,

"[t]he low-impact campground is a resource-dependent use because it is impossible to have the same experience at any other location." We find that low-impact campgrounds that are located within ESHA are entirely dependent on the "plant or animal life or their habitats [that] are either rare or especially valuable because of their special nature or role in an ecosystem." (§ 30107.5.) Thus, by definition, they are a resource-dependent use.

Accordingly, we conclude that low-impact campgrounds may properly be considered a resource-dependent use within the meaning of section 30240.

## III. The Commission Complied With the Writ's Requirements

In ruling on RCPF's original writ petition, the trial court found that the local coastal program "does not properly implement section 30240's prohibition against significant disruption, and instead implements a lower standard that development should avoid disruption 'where feasible' and mitigated if necessary." Thus, the court concluded, the local coastal program's "standards for issuance of permits for low-impact campgrounds violates section 20340's [*sic*] protection of ESHA." This finding resulted in a victory for RCPF, as it asserted in the trial court not only the argument that low-impact campgrounds were not a resource-dependent use, but also that such campgrounds would significantly disrupt habitat values.

Notwithstanding this victory, RCPF continues to argue on appeal that low impact campgrounds will significantly disrupt habitat values. But the trial court ruled in RCPF's favor on this issue in the original writ petition. And when granting the Commission's motion to discharge the writ, the trial court found

24

that "[t]he Commission has certified [local coastal program] amendments clarifying that low-impact campgrounds are allowed in ESHA only when they avoid significant disruption of ESHA habitats."

Further, RCPF asserts the trial court's discharge order somehow conflicts with the order granting the writ. We disagree. In granting the writ, the court specifically ordered that "[o]nly the provisions permitting low-impact campgrounds based on a feasibility/mitigation standard of development must be set aside as void, and the Commission retains discretion as to how to rectify the issue." In the discharge order, the court concluded that the Commission had done exactly that and the amendments now complied with the Coastal Act. In other words, low-impact campgrounds are allowed in ESHA only when they avoid significant disruption of ESHA habitats. There is no conflict between the two orders.

Finally, RCPF contends the record fails to demonstrate the Commission complied with the writ because the amended local coastal program's provisions still apply a feasibility/mitigation standard for development. In so doing, it refers to several provisions located in the administrative record. Only one of the provisions on which RCPF's argument relies can be found in the clerk's transcript.

To the extent it relies on the record of the administrative proceedings, RCPF's argument fails because RCPF did not timely lodge the administrative record with this court. At the hearing on the writ petition in August 2017, the trial court admitted the administrative record into evidence. After ruling on the petition, the trial court returned the administrative record to RCPF with specific instructions that the record "is to be forwarded to the

25

court of appeal in the event of an appeal." The California Rules of Court provide that "the party in possession of the administrative record must . . . lodge the record with the clerk of the reviewing court at the time the last respondent's brief is due." (Cal. Rules of Court, rule 8.123(d)(1).) Here, RCPF failed to lodge the administrative record with this court until November 18, 2025, three days before oral argument.

Nevertheless, even setting aside the untimely submission of the administrative record, that record does not assist RCPF in its argument here. The administrative record necessarily reflects the status of the local coastal program at the time of the hearing in August 2017, when it was admitted into evidence. As a practical matter, the administrative record cannot reflect changes made to the local coastal plan after August 2017. Thus, the administrative record does not assist RCPF in its argument that the Commission failed to comply with the underlying writ order.

RCPF provided one section of the amended plan for our review in the clerk's transcript: section 22.44.1920(M)(2)(a), (b), and (c) of the local implementation plan. RCPF also objected to this amended section in its opposition to the Commission's motion to discharge the writ in the trial court, and the trial court overruled the objections when granting the motion.

On appeal from an order discharging a writ of mandate, "[t]he . . . issue to be resolved . . . is simply whether the trial court erred in finding that the [public entity] failed to comply with the writ . . . ." (*City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 972.) To the extent the issue turns on whether the record supports a determination that the public entity has complied with the writ, we review the matter for

26

substantial evidence.  (See *Cosgrove v. County of Sacramento* (1967) 252 Cal.App.2d 45, 51.)

We find substantial evidence supports the trial court's conclusion.  As the trial court noted, section 22.44.1920(M)(2) was revised to "avoid significant disruption of habitat value in order to minimize adverse impacts to H1 and H2 habitat." Having reviewed the record that is available to us, we conclude it does not—as RCPF contends—demonstrate that any of these provisions permit the development of resource-dependent uses that would significantly disrupt habitat values in H1 and H2 and any references to the feasibility standard for H1 and H2 habitat have been eliminated.

As amended, section 22.44.1920(M)(2)(a) states:  "*Resource-dependent uses shall be sited and designed to avoid significant disruption of habitat values in H1 and H2 habitats* and to minimize all impacts to other habitat to the maximum extent feasible.  The development shall be the minimum design necessary to accommodate the use and *avoid significant disruption of habitat value* in order to minimize adverse impacts to H1 and H2 habitat[.]"  (Italics added.)

Similarly, the amended version of section 22.44.1920(M)(2)(b) states, in relevant part:  "*Accessways to and along the shoreline that are located in H1 and H2 habitat shall be sited, designed, and managed to avoid significant disruption of habitat values*, including by protecting marine mammal hauling grounds, seabird nesting and roosting sites, sensitive rocky points and intertidal areas, and coastal dunes.  *Inland public trails shall be located, designed, and maintained to avoid significant disruption of habitat values in H1 and H2 habitat areas* and to protect other coastal resources, by utilizing established trail

27

corridors or other disturbed areas, following natural contours to minimize grading, and avoiding naturally vegetated areas with significant native plant species to the maximum extent feasible." (Italics added.)

Finally, as amended, section 22.44.1920(M)(2)(c) states, in pertinent part: *"Low-impact campgrounds shall be located, designed, and maintained to avoid significant disruption of habitat values in H1 and H2 habitat areas*, and must also avoid or minimize impacts to other coastal resources. Such campgrounds shall utilize established disturbed areas where feasible, follow natural contours to minimize grading, and avoid naturally vegetated areas with significant native plant species to the maximum extent feasible." (Italics added.)

In short, RCPF's argument overlooks the language in the amended version of section 22.44.1920(M)(2) specifying resource-dependent uses, including low-impact campgrounds, accessways, and trails, must be located, designed, sited, and maintained to avoid significant disruption of habitat values in H1 and H2, regardless of feasibility. The only reference to feasibility applies to areas *outside* of H1 and H2 habitat areas, referred to as "other habitat" or "other coastal resources." Contrary to RCPF's contention, the amended provisions do not permit significant impacts to H1 and H2 so long as they are mitigated. Substantial evidence therefore supports the trial court's order discharging the writ based on the Commission's satisfaction of the writ's requirements.

28

## DISPOSITION

The order discharging the writ of mandate is affirmed. Respondent shall recover its costs on appeal.

UZCATEGUI, J.*

We Concur:

STRATTON, P. J.

VIRAMONTES, J.

---

\* Judge of the Los Angeles County Superior Court, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.